UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JENNIFER GALVAN-FLORES,

    Plaintiff,

v.                                                        Case No:   2:14-cv-448-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

**OPINION AND ORDER**

This cause is before the Court on Plaintiff Jennifer Galvan-Flores's Complaint (Doc. 1) filed on February 6, 2014. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI")[1]. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED in part, and REVERSED AND REMANDED in part** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

    **I. Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A. Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] The regulations relating to SSI are found in 20 C.F.R. Part 416, 20 C.F.R. § 416.901 *et seq*, and are generally identical to the regulations governing Social Security disability determinations which are found in 20 C.F.R. Part 404, Subsection P, 20 C.F.R. § 404.1501 *et seq*. The standard of review is the same for both SSI and Social Security disability cases, and therefore, the same case law applies to both. *See*, 42 U.S.C. § 1383(c)(3).

death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§423(d)(2), 1382(a)(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B. Procedural History

On June 9, 2010, Plaintiff filed an application for supplemental security income asserting a disability onset date of January 1, 2009. (Tr. p. 70,115-122). Plaintiff's application was denied initially on September 30, 2010, and on reconsideration on February 22, 2011. (Tr. p. 70-71). A hearing was held before Administrative Law Judge Larry J. Butler on July 31, 2012. (Tr. p. 29-54). The ALJ issued an unfavorable decision on January 18, 2013. (Tr. p. 12-23). On July 25, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. p. 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on August 13, 2014. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (See, Doc.17).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Commissioner of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[2](citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. Ap. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

determine whether the claimant (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 9, 2010, the application date. (Tr. p. 14). At step two, the ALJ found that the Plaintiff suffered from the following severe impairments: fibromyalgia, obesity, lumbago, and myalgia and myositis citing 20 C.F.R. 416.920(c). (Tr. p. 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925, and 416.926). (Tr. p. 38). At step 4, the ALJ determined that the Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. 416.967(c). (Tr. p. 18). At step 5, the ALJ determined that Plaintiff had no past relevant work, was born on October 27, 1982 and was a younger individual, had at least a high school education, was able to communicate in English, and that transferability of job skills was not an issue. (Tr. p. 22). The ALJ considered Plaintiff's age, education, work experience, and RFC, and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. p. 22). The ALJ concluded that Plaintiff was not under a disability as defined the Social Security Act since June 9, 2010, the date the application was filed. (Tr. p. 23).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Analysis**

Plaintiff raises three issues on appeal. As stated by Plaintiff, they are:

1) The ALJ violated 20 C.F.R. § 416.920(a)(3) by explicitly not basing his decision on the entire record.

2) The ALJ failed to apply proper legal standards when evaluating the medical opinions and the RFC is not supported by substantial evidence

3) The record establishes non-exertional limitations, requiring vocational expert testimony.

### A. Whether the ALJ failed to base his decision on the entire record

Plaintiff asserts that the ALJ erred in not considering the entire record in his decision. The ALJ stated, "[s]ince supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), my discussion will focus on the medical evidence as of June 9, 2010, the protected filing date." (Tr. p. 19). Plaintiff claims that the ALJ should have considered all of the medical evidence whether it supported the ALJ's decision or not, and the ALJ applied an incorrect legal standard. The Commissioner argues that the ALJ carefully considered "the entire record" in evaluating the evidence and determining Plaintiff's RFC. (Tr. p. 18).

An ALJ is mandated to consider all of the medical evidence so that the ALJ can accurately determine a claimant's RFC. 20 C.F.R. §§416.920b and 416.920(a)(3). "We will consider all evidence in your case record when we make a determination or decision whether you are disabled." 20 C.F.R. 920(a)(3) (citing 20 C.F.R. 416.920b). The ALJ must review of all the medical record to make a finding of an RFC for a claimant and determine if a claimant can return to her past relevant work. 20 C.F.R. 416.920(a)(4). "The focus of a residual functional capacity determination is on the objective medical findings made by a plaintiff's doctors and their analysis based on those findings." *Zellner v. Astrue*, 2010 WL 1258137, *7 (M.D. Fla. March 29, 2010)(citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). In addition, an ALJ may

not pick and choose the evidence he considers when rendering a decision. *Id*. (citing *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986)).  Plaintiff has the burden of proof through step four to provide medical evidence to support her claims. *Hines-Sharp v. Commissioner of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

Plaintiff filed an application for benefits on June 9, 2010. The ALJ stated at the beginning of his summary of the medical evidence that "[t]he medical evidence of record does not support the claimant's allegation of disabling conditions and symptoms. Since supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), my discussion will focus on the medical evidence as of June 9, 2010, the protected filing date."   (Tr. p. 19).     The ALJ then summarized Plaintiff's medical records before the date of the filing of the application from January 26, 2009 through May 22, 2010. (Tr. p. 19-20). The ALJ did note that in most of these medical records, many of the results of the tests were normal. (Tr. p. 19-20). The ALJ noted that on April 2, 2010 and April 10, 2010, Plaintiff saw Jeffrey Alper, M.D., and Dr. Alper thought Plaintiff may have fibromyalgia, but would not make a specific rheumatologic diagnosis. (Tr. p. 19-20).

Plaintiff argues that the ALJ's Decision should be reversed because he stated that his discussion would be "focused on" the medical evidence after the application date of June 9, 2010. The ALJ, however, did consider the medical evidence prior to the application date and included a summary of this medical evidence.   Plaintiff failed to cite to any medical evidence that the ALJ failed to include that occurred prior to the application date, or cite to any medical evidence that was included in the record from prior to the application date that would show that the ALJ failed to consider it when determining Plaintiff's RFC.   The ALJ clearly considered the evidence prior to the application date, therefore, the ALJ did not violate 20 C.F.R. § 416.920(a)(3).

### B. Whether the ALJ failed to apply proper legal standards when evaluating the medical opinions and the RFC is not supported by substantial evidence

Plaintiff argues that the ALJ rejected the opinion of Plaintiff's treating rheumatologist, non-examining consultant physician, and two examining psychologists, by concluding that Plaintiff has an RFC for the full range of medium work, when no medical source supports this RFC finding. The Commissioner responds that the ALJ's determination is supported by substantial evidence.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010). However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

As stated above, an ALJ is required to consider all of the evidence in the case record when he makes his determination. 20 C.F.R. §404.1520(a), *Brunson v. Astrue*, 850 F. Supp.2d 1293, 1304 (M.D. Fla. 2011). An ALJ must consider the medical opinions that were submitted in the record as well as other relevant evidence. 20 C.F.R. §404.1527(b). Medical opinions are statements from physicians and may include a claimant's symptoms, diagnosis and prognosis. 20

C.F.R. §404.1527(a)(2).   The ALJ is required to "state with particularity the weight he gave the different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987, *See also, Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). Without such a statement by the ALJ, a court cannot determine if the merits of a claim are rational and supported by substantial evidence. *Winschel*, 631 F.3d at 1179.  An ALJ may disregard an opinion of a treating physician, however, he must articulate clear reasons for disregarding an opinion.  *Winschel*, 631 F.3d at 1179.

   The ALJ gave some weight to Plaintiff's treating physician, Dr. Alper.   On April 2, 2010, Plaintiff saw Dr. Alper for low back pain and fatigue. (Tr. p. 294). Plaintiff had not felt well for 1-2 years, had lower back pain, fatigue, and discomfort in her muscle groups in joints, with frequent muscle spasms, numbness, and had an elevated Sed rate.   (Tr. p. 294). Most of Plaintiff's examination was normal with the exception of having mild tenderness in certain areas, and trigger points in the lumbar area.   (Tr. p. 295). Dr. Alper's assessment was myalgia and myositis with an elevated Sed rate. (Tr. p. 295). Dr. Alper opined that Plaintiff may be suffering from fibromyalgia, or some type of myoclonus. (Tr. p. 295).    On April 13, 2010, Plaintiff saw Dr. Alper with an elevated Sed rate, muscle spasms, tremor, and myotonic episodes. (Tr. p. 292).   Dr. Alper assessed Plaintiff with joint pain in multiple joints, myalgia and myositis.  He could not make a specific rheumatologic diagnosis. (Tr. p. 292).   On June 30, 2010, Plaintiff saw Dr. Alper for muscle spasms, tremor, myotonic episodes in her hands, inability to sleep well, and severe diffuse myofascial pain.   (Tr. p. 301). Plaintiff saw a neurologist who believed she was suffering from early onset dementia and prescribed Exelon patches. (Tr. p. 301).   Dr. Alper's assessment was myalgia and myositis, joint pain in multiple joints and elevated Sed Rate.   (Tr. p. 302).   Dr. Alper found Plaintiff to demonstrate diffuse myofascial trigger point tenderness on examination which

was consistent with a diagnosis of fibromyalgia. (Tr. p. 302). Dr. Alper prescribed medication for sleep. (Tr. p. 302). Plaintiff returned on October 29, 2010. (Tr. p. 298-99). Dr. Alper found Plaintiff to have diffuse myofascial trigger point tenderness on examination, and elements of fibromyalgia, but her neurologic symptoms were unexplained. (Tr. p. 299). Dr. Alper reported that Plaintiff experienced tremors and myotonic episodes. (Tr. p. 299). Dr. Alper would consider medications, but first Plaintiff had to obtain a diagnosis for her neurologic symptoms, but Dr. Alper did prescribe Medrol dosepak. (Tr. p. 299).

On January 14, 2011, Plaintiff saw Dr. Alper for fibromyalgia. (Tr. p. 361). Plaintiff's sleep was helped with medication, but she asked to have her pain medication increased, and her muscle spasms, tremors and myotonic episodes continued. (Tr. p. 361). Dr. Alper had the same diagnosis, was still concerned about the elevated Sed rate, and was concerned about a neurologic illness that had not been diagnosed. (Tr. p. 362). Plaintiff saw Dr. Alper on May 6, 2011 for the same problem of generalized pain. (Tr. p. 359). Plaintiff had gone to Dr. Brian Wolff, a neurologist, but Dr. Alper did not have the results of Plaintiff's extensive neurologic testing except that MS was ruled out. (Tr. p. 35). Dr. Alper ruled out inflammatory arthritis, finding Plaintiff's symptoms were more consistent with fibromyalgia. (Tr. p. 359). Dr. Alper was comfortable with the diagnosis of fibromyalgia and decided to begin a treatment plan for it. (Tr. p. 359-60). On July 7, 2011, Plaintiff returned to Dr. Alper. (Tr. p. 357). Plaintiff told Dr. Alper that the medication Savella gave her a marked improvement in her myofascial pain, but she had to discontinue use due to episodes of dyspnea. (Tr. p. 357). Plaintiff's joint pain was severe during the day. (Tr. p. 357). Plaintiff wanted to try Savella again, and Dr. Alper gave her another titration pack, as well as prescribing other medication. (Tr. 358). On February 2, 2012, Plaintiff saw Dr. Alper for fibromyalgia. (Tr. p. 353). Savella was helping Plaintiff, but higher doses caused

nausea. (Tr. p. 353). Dr. Alper continued Plaintiff on Savella and other medications. (Tr. p. 354).

On May 25, 2012, Dr. Alper completed a Fibromyalgia Residual Functional Questionnaire. (Tr. p. 369-373). Dr. Alper found Plaintiff met the American Rheumatological criteria for fibromyalgia, and has an uncertain prognosis. (Tr. p. 369). Dr. Alper listed Plaintiff's symptoms as: multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, subjective swelling, irritable bowel syndrome, depression, incoordination, numbness and tingling, anxiety, frequent severe headaches, cognitive impairment, and multiple trigger points. (Tr. p. 369-70). Dr. Alper reported that Plaintiff suffered from severe pain constantly, and had marked limitations in dealing with work stress. (Tr. p. 370). Dr. Alper noted that Plaintiff suffered from nausea and dizziness from her medications. (Tr. p. 371). Dr. Alper found that Plaintiff could stand/walk either less than 2 hours or about 2 hours, could sit about 4 hours, needed to be able to shift positions at will, needed to lie down at unpredictable intervals, could lift less than 10 lbs. frequently, 20 lbs. occasionally, and 50 lbs. never. (Tr. p. 371). Dr. Alper found Plaintiff to have no significant limitations in reaching, handling or fingering, could bend and twist occasionally, and Plaintiff would be absent from work more than 3 times per month. (Tr. p. 372). Dr. Alper found that Plaintiff had headaches, sleep deprivation, morning stiffness, weakness, fatigue, dizziness, memory impairment, motor coordination problems, sensitivity to cold/heat/light/humidity, numbness/tingling, anxiety, and lack of endurance. (Tr. p.371-372).

The ALJ reviewed Dr. Alper's medical records and his assessment of Plaintiff's limitations and stated, "I give some weight to Dr. Alper's assessment but the medical evidence of record shows that the claimant is not so limited (e.g. Ex. 12F/1 and 13F/3)." (Tr. p. 21). The ALJ did state the weight he gave to Dr. Alper's assessment, however, Dr. Alper was Plaintiff's treating

physician, and the ALJ failed to state the reasons why he gave Dr. Alper's assessment only some weight. Dr. Alper treated Plaintiff for years for fibromyalgia. Without a clarifying statement as to why the ALJ failed to give great weight to Plaintiff's treating physician, the Court is unable to determine whether the decision of the Commissioner was supported by substantial evidence. *Shaw v. Astrue,* 392 F. App'x 684, 686 (11th Cir. 2010). Further, fibromyalgia has been treated differently than other diseases by the Eleventh Circuit. Fibromyalgia is a unique disease and "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)(*per curiam)*. Courts have held that a lack of objective findings alone is not sufficient to support an ALJ's rejections of a treating physician's findings as to a claimant's functional limitations. *Daniel v. Colvin*, 2013 WL 5434571 (N.D. Ala. Sept. 27, 2013)(citing *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. App'x 56, 64 (11th Cir. 2010)). Therefore, without further explanation as to why the ALJ gave only some weight to Dr. Alper's assessment, the Court finds that the ALJ erred in failing to give reasons why Dr. Alper's assessment was not given great weight, and therefore, the Decision of the ALJ is not supported by substantial evidence.

The ALJ also gave some weight to the State Agency physician Dr. Debra Troiano. (Tr. p. 21-22). On December 10, 2010, Debra Troiano, M.D. completed a Physical Residual Functional Capacity Assessment (Tr. p. 304-311). Dr. Troiano determined Plaintiff could occasionally lift 20 lbs., frequently lift 10 lbs., stand /walk for 6 hours in an 8-hour workday, sit for 6 hours in and 8-hour workday, and her ability to push and pull was unlimited. (Tr. p. 305). Dr. Troiano found Plaintiff was able to climb, stoop, and kneel frequently, never able to balance or crawl, and able to crouch occasionally. (Tr. p. 306). Dr. Troiano limited Plaintiff to avoiding extreme cold and hazards, but was unlimited in extreme heat, wetness, humidity, noise vibration, and fumes. (Tr. p.

308). Dr. Troiano concluded that Plaintiff "has MDI [medically determinable impairments] and moderate functional limitation. Her allegations are consistent with MER [medical evidence of record]. She appears capable of performing SGA [substantial gainful employment] with limitations described in this report." (Tr. p. 309). The ALJ gave some weight to Dr. Troiano's assessment, finding it was well supported by the objective medical evidence of record and consistent with the record as a whole, but then he found that Plaintiff was not as limited as Dr. Troiano opined as evidence by Plaintiff's normal physical examinations. (Tr. p. 22). Even though Dr. Troiano was a non-examining physician and not entitled to great weight, the ALJ must provide reasons why he did not give more weight to Dr. Troiano's opinion. Dr. Troiano found Plaintiff had limitations greater than an RFC of being able to perform the full range of medium work. The ALJ failed to specify which medical records or evidence in the record which supports his finding that Plaintiff was able to perform the full range of medium work when Dr. Alper and Dr. Troiano both found Plaintiff had limitations that would prevent her from performing medium work. Therefore, the Court finds that the ALJ erred in failing to explain why he gave only some weight to Plaintiff's treating and non-examining physician, and why he decided without support from the record that Plaintiff was able to perform the full range of medium work. The Court determines that the Commissioner's Decision was not supported by substantial evidence.[3]

### C. Whether a vocational expert is required

Plaintiff argues that the ALJ erred in failing to obtain a vocational expert due to Plaintiff's non-exertional limitations. Because the Court finds that the Commissioner must reevaluate the medical evidence of record which may change the RFC, the Court finds it premature to rule on

---

3 Plaintiff also raises the issue that the ALJ failed to give proper weight to Dr. Cheryl Kasprzak's opinion. The Court will remand this action to the Commissioner to reconsider the weight afforded all of the treating, examining and non-treating non-examining physicians, and therefore, will not set forth a separate analysis for Dr. Kasprzak.

Plaintiff's arguments as to whether the ALJ erred in failing to obtain the testimony of a vocational expert.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence as to the issue of whether the ALJ based his decision on the entire record, but not supported by substantial evidence as to the issue of the weight the ALJ afforded the physicians of record.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **AFFIRMED** as to the issue whether the ALJ based his decision on the entire record, and **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider all of the medical records and the opinions of the physicians of record and assign the appropriate weight to each opinion, and to obtain the testimony of a vocational expert, if necessary.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE** and **ORDERED** in Fort Myers, Florida on April 22, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties